IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ronald Gary, ) | |
| ) | |
| Plaintiff, ) | C.A. No.: 4:06-2720-PMD-TER |
| ) | |
| v. ) | |
| ) | **ORDER** |
| Officer R.L. Floyd and the Greenville ) | |
| City Police Department, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court upon Defendant R.L. Floyd's ("Floyd") and Defendant Greenville City Police Department's Motion for Summary Judgment. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A dissatisfied party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff Ronald Gary ("Plaintiff") filed timely objections to the R&R.

## **BACKGROUND**

On September 28, 2006, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983, alleging that he was arrested without probable cause. He alleges that he was arrested pursuant to warrants obtained improperly by Detective Floyd of the Greenville Police Department on May 6, 2005, after erroneously being accused of forgery. Based on the erroneous information and warrants, Plaintiff was incarcerated on September 26, 2005, and Plaintiff alleges that as a result he was detained at the Greenville County Detention Center in excess of one year, was not allowed a personal recognizance bond, and was maliciously prosecuted.

1

The events giving rise to this suit occurred when Plaintiff cashed five checks made payable to Frank Gary at the Kash and Karry. According to Plaintiff, he was provided power of attorney by his brother, Frank Gary, on February 16, 2004, while Frank was temporarily housed in a nursing home "without decisional capacity," and this power of attorney was never revoked. (Compl. at 4.) Plaintiff asserts that on April 27, 2005, Detective Floyd received a complaint from Ms. Vickie McCormick, who was identified as Victim #1 and Frank Gary, who was identified as Victim #2. Ms. McCormick filed a complaint asserting that Plaintiff had forged his brother's signature, Frank Gary, on checks totaling $500, which were cased at the Kash and Karry and returned by the bank as forged checks. While acknowledging that Frank Gary signed affidavits indicating that he had not signed those checks or given anyone permission to sign those checks on his behalf, Plaintiff refutes the validity of those affidavits, asserting that Frank Gary was "coerced" into signing those affidavits because Frank Gary was not competent to sign those affidavits in December of 2004. Plaintiff thus asserts that he was arrested based on erroneous information submitted by the alleged victims in this case and that Detective Floyd was negligent by (1) failing to conduct an investigation in an effort to find probable cause to make an arrest and (2) obtaining five arrest warrants for five forged checks and falsely charging Plaintiff with forgery. Plaintiff asserts that if Detective Floyd had conducted an investigation, "he would have been fully aware of the true facts surrounding this case." (Compl. at 7.)

Plaintiff was released on September 24, 2006, because the forgery charges against him were dismissed. In his Complaint, Plaintiff asserts that he was not released until this date, despite the fact that the charges against him were dismissed on August 22, 2006. Plaintiff seeks both compensatory and punitive damages.

2

Defendants filed a motion for summary judgment, asserting Detective Floyd had probable cause at the time he swore out the arrest warrant and that ample probable cause existed at the time of Plaintiff's arrest. On October 22, 2007, Magistrate Judge Thomas E. Rogers, III, issued a Report and Recommendation in which he recommended granting Defendants' Motion for Summary Judgment. Magistrate Judge Rogers recommended granting Defendants' motion because (1) Defendants had probable cause to arrest Plaintiff, (2) Defendant Floyd is entitled to qualified immunity, and (3) Greenville Police Department cannot be held liable under § 1983 pursuant to respondeat superior.

## STANDARD OF REVIEW

### A. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).

### B. Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole

or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.[1]

## **ANALYSIS**

In his Objections, Plaintiff again seems to assert that Defendants did not have probable cause to arrest him. He asserts that the "allegations which were made against the Plaintiff . . . have been proven false." (Objections at 1-2.) He continues, "The Plaintiff committed no crime nor was he convicted of a crime in this case. The Plaintiff was innocent of the charges which had been wrongfully placed upon him which deprived him of his right to liberty." (*Id*. at 2.) While true that Plaintiff was not convicted of forgery, as the charges were dismissed, the fact that Plaintiff was not convicted does not mean that the Defendants did not have probable cause to arrest him. *See Walker v. Scott*, No. 7:05-CV-00010, 2006 WL 1288315, at *6 (W.D. Va. May 4, 2006) ("Probable cause requires more than mere suspicion of wrongdoing, but requires much less evidence than needed to convict."); *see also Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means much less than evidence which would justify condemnation or conviction . . ." (internal quotation marks and citations omitted)). Under the Fourth Amendment, probable cause for arrest "exists where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Dunaway v. New York*, 442

---

[1] However, Plaintiff is allowed to amend his Complaint as detailed in this order.

4

U.S. 200, 208 n.9 (1976) (internal quotation marks and citations omitted); *see also Clipper v. Takoma Park, Md.*, 876 F.2d 17, 19 (4th Cir. 1989).

Plaintiff then makes the very argument he made in his Complaint an in opposing Defendants' Motion for Summary Judgment: he asserts the affidavits of McCormick and Floyd "were based wholly or in part on the erroneous information contained in their initial police/supplemental police reports." (Objections at 2.) He seems to urge the court not to consider those affidavits, stating they "should be deemed as moot and invalid based on the foregoing as well as the erroneous information contained in these affidavits." (*Id.*) The error Plaintiff seems to complain of was that he had a power of attorney for Frank Gary. It thus appears that Plaintiff argues Defendants are liable under § 1983 because Detective Floyd failed to conduct an investigation into whether Plaintiff may have had the authority to sign Frank Gary's name to the checks cashed at the Kash and Karry. Plaintiff states,

> Based upon information and belief, an investigation is purposed in order to secure just answers or to find the truth at all cost by carefully making systemic inquiries. The defendants['] supplemental police report does not reflect this fact. The supplemental police report of Officer Floyd clearly shows the exact opposite. It simply contains the same erroneous information presented to the Greenville Police Dept. by Ms. Vickie L. McCormick. In turn the Plaintiff feels the defendants failed to act within the scope of their assigned duties. Inculpatory evidence which was totally false was the basis of their findings of probable cause in securing arrest warrants against the Plaintiff.

(Objections at 2-3.)

In *Miller v. Prince George's County, Maryland*, 475 F.3d 621 (4th Cir. 2007), the plaintiff brought a § 1983 suit against a police officer, alleging that the officer "violated the Fourth Amendment by deliberately or recklessly making material false statements and omissions on a warrant affidavit, ultimately resulting in [the plaintiff's] arrest without probable cause and

5

imprisonment for an offense [the plaintiff] never committed." *Miller*, 475 F.3d at 624. The district court granted summary judgment to the officer, concluding that his actions did not violate the plaintiff's constitutional rights and that even if they did, the officer was entitled to qualified immunity with respect to the federal constitutional claims. *Id*. at 626. The Fourth Circuit first addressed whether, considering the facts in the light most favorable to the plaintiff, the alleged facts show the police officer violated a constitutional right. *Id*. at 627. The plaintiff alleged his seizure was unreasonable "because it followed from a warrant affidavit that was deficient because it was dishonest." *Id*. The Fourth Circuit stated,

> To succeed on his claim, Plaintiff must prove that Det. Dougans deliberately or with a reckless disregard for the truth made material false statements in his affidavit, or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.
> "Reckless disregard" can be established by evidence that an officer acted with a high degree of awareness of a statement's probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. With respect to omissions, "reckless disregard" can be established by evidence that a police officer failed to inform the judicial officer of facts he knew would negate probable cause. A plaintiff's allegations of negligence or innocent mistake by a police officer will *not* provide a basis for a constitutional violation.

*Id*. at 627-28 (internal quotation marks and citations omitted).

The Fourth Circuit concluded that a reasonable jury could conclude that the affidavit submitted by the officer contained misrepresentations and omissions made deliberately or with reckless disregard for whether they made the affidavit misleading. *Id*. at 629. In so concluding, the Fourth Circuit noted,

> Plaintiff Miller maintains that in the arrest affidavit Det. Dougans intentionally listed Plaintiff's birthdate, height, weight, driver's license number and vehicle tag number as those of a white man suspected of committing the burglary, when Det. Dougans knew (or recklessly disregarded the fact) that this information

6

> identified the Plaintiff, an African-American man never suspected of committing the burglary. Plaintiff also asserts that Det. Dougans, intentionally or with reckless disregard for the truth, omitted from his affidavit the source of the information about Plaintiff's birthdate, height, weight, and driver's license number–never stating that all of this information was obtained from the computer records of an African-American, who could not be the white suspect.
>
> Moreover, Plaintiff asserts that in his affidavit Det. Dougans deliberately, or with reckless disregard for the truth, misrepresented information about Plaintiff's license plate tag number by stating that an eyewitness to the burglary supplied the number as that of the getaway car driven by the white suspect, when actually Det. Dougans had obtained the tag number from the computer records of the African-American Plaintiff and had established *no* link between that number and the getaway car or the white suspect. Further, Plaintiff maintains that Det. Dougans deliberately, or with reckless disregard for the truth, omitted from the warrant affidavit the fact that he had searched the state criminal database for a white male with Plaintiff's birthdate and retrieved *no* match. Plaintiff contends that these misrepresentations and omissions were material; that is, a corrected affidavit–one without the misrepresentations and including the omissions–would not have provided probable cause to arrest him.

*Id*. at 628. In concluding that a reasonable jury could find the police officer violated the plaintiff's constitutional rights, the court continued,

> It is . . . plain that an officer is not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established. However, the Supreme Court has made equally clear that police officers cannot intentionally lie in warrant affidavits, or recklessly include or exclude material information known to them. An investigation need not be perfect, but an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause.

*Id*. at 630-31.

In the case *sub judice*, Detective Floyd's affidavit for swearing out a warrant against Plaintiff did not include information concerning Plaintiff's power of attorney. However, nowhere does Plaintiff allege that Detective Floyd had knowledge of the power of attorney; rather, he argues that had Detective Floyd not been negligent in his investigation, Detective Floyd would have discovered the power of attorney. The case *sub judice* is thus easily distinguishable from *Miller*. There has

7

been no case of mistaken identity, and Plaintiff does not allege that Detective Floyd's affidavit contains false information–he asserts that it fails to contain material information. Furthermore, Frank Gary signed affidavits indicating that he had not signed the checks at issue and that he had not given anyone permission to sign on his behalf. In addition, while Plaintiff was cashing the checks, he did not indicate he was signing them pursuant to a power of attorney; rather, he simply signed the name "Frank Gary." There are no allegations that Detective Floyd lied in seeking the arrest warrant, and there is no evidence to support a finding that he acted with reckless disregard. It stretches credulity to argue that by failing to investigate Frank Gary's competency, Detective Floyd violated Plaintiff's constitutional rights. Ms. McCormick indicated that the Kash and Karry suffered a $500 loss as a result of checks returned because Frank Gary submitted an affidavit indicating that he did not sign the checks or give anyone permission to sign the checks. Plaintiff signed those checks, and he did so as Frank Gary, without indicating that he signed them pursuant to a power of attorney. Given the facts before Detective Floyd, the court agrees with the Magistrate Judge that probable cause existed to arrest Plaintiff.[2]

---

[2]Plaintiff cites *Clipper v. Takoma Park, Maryland*, 876 F.2d 17 (4th Cir. 1989) to support his argument that "law enforcement officers should reasonably interview witnesses available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before an arrest or detention." (Addendum to Objections at 2.) In *Clipper*, the City of Takoma Park, Maryland appealed the judgment of the district court entered after a jury verdict in favor of the plaintiff on his § 1983 claim that he had been denied due process because police officers arrested him without probable cause and jailed him after he was misidentified as a bank robber. *Clipper*, 876 F.2d at 18. Takoma Park argued that the officer had probable cause to arrest the plaintiff and that the officer had no duty to pursue exculpatory evidence. *Id*. at 19. However, the Fourth Circuit upheld the jury verdict:

> Viewing the probable cause evidence according to this principle and under the appropriate evidentiary review standard, we conclude that ample evidence exists to support the verdict. The jury considered evidence that neither Corporal Starkey nor other Takoma Park officers pursued evidence they might have obtained from individuals who would have told them that [the plaintiff] could not have robbed the

Plaintiff also objects to the Magistrate Judge's determination that Defendants are entitled to qualified immunity and that the Greenville Police Department cannot be liable under the theory of respondeat superior. (Objections at 5.) His objection is not specific, and "[c]ourts have . . . held de novo review to be unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). However, as Plaintiff noted an objection to these recommendations, the court will address the objection.

As the Magistrate Judge noted in the R&R, the Supreme Court has held that "government

---

bank because he was at another place at the time of the robbery. Starkey testified that Officer Wortman, the officer on the scene of the robbery, told him that although [the plaintiff] looked like the robber, he was not sure [the plaintiff] was the man. Further, prints from the bank surveillance film were available from the FBI by the evening of May 14. It is not clear whether anyone in the Takoma Park Police Department had obtained copies of the bank surveillance photographs prior to [the plaintiff's] arrest or while he was incarcerated, and the evidence relating to that factual issue is conflicting. [The plaintiff] contends, however, that, if viewed, the photographs would have conclusively established that he was not the missing robber. The photographs were introduced at trial, and again we must view that evidence in a light favorable to Clipper.
    *We would not suggest that Starkey's failure to investigate the leads that Clipper provided was, in itself, sufficient to negate probable cause. In our view, however, the evidence of that omission, the evidence of Wortman's statement to Starkey, and the speculative nature of the other information and investigative instincts upon which Starkey relied in making the arrest form a sufficient evidentiary base to sustain the verdict upon the post-trial motions and on appeal.*
*Id.* at 19-20 (citations omitted) (emphasis added).
    Contrary to Plaintiff's assertion, the Fourth Circuit did not hold the mere failure to investigate certain exculpatory evidence in itself negated probable cause. Moreover, in the case *sub judice*, there was no mistake as to identity–Plaintiff was the one who signed "Frank Gary" to the back of the checks cashed at the Kash and Karry. Unlike in *Clipper*, in the case *sub judice*, the police officer did not have any exculpatory evidence at the time he made the arrest. While Plaintiff asserts a more complete investigation would have revealed such information, the court finds that Detective Floyd's investigation did not deprive Plaintiff of his constitutional rights, especially given that he had no reason to believe Frank Gary was not competent to sign the affidavits.

officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In addressing the defense of qualified immunity, the Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). If the court determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

As previously noted, Magistrate Judge Rogers concluded the Defendants were entitled to qualified immunity. In the R&R, he stated,

> For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. . . . The undersigned cannot conclude that the defendants in this case transgressed bright lines . . . officials are not liable for bad guesses in gray areas. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

R&R at 13-14. The court agrees with the Magistrate Judge that Detective Floyd is entitled to qualified immunity. As noted above, the court concluded that Defendants had probable cause to arrest Plaintiff and that Defendants thus did not violate Plaintiff's constitutional rights. Thus, the inquiry ends there, and Officer Floyd is entitled to qualified immunity. *See Porterfield*, 156 F.3d at 567; *see also Sarratt v. Daugherty*, No. 2:06-3375-HFF-RSC, 2007 WL 2455201, at *4 (D.S.C. Aug. 23, 2007). Plaintiff's objection is thus without merit.

Plaintiff also objects to the Magistrate Judge's determination that the Greenville Police

10

Department cannot be held liable under § 1983 under a theory of respondeat superior. As explained by the Magistrate Judge, a local governmental entity cannot be held vicariously liable for the unconstitutional acts of its employees and is only liable under § 1983 if it causes a deprivation of constitutional rights through an official policy or custom. *See Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *see also Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987). An employer or supervisor may be held liable only if the plaintiff can show that they had actual knowledge of the specific danger but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger. *See Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984).

In the R&R, Magistrate Judge Rogers stated, "Defendant Greenville Police Department cannot be held liable under a respondeat superior theory under Title 42, U.S.C. § 1983 for the acts of a subordinate employee. Thus, it is recommended that all allegations against defendant Greenville Police Department be dismissed on this theory." (R&R at 14-15.) The court agrees with the Magistrate Judge's reasoning. Plaintiff has not alleged a deprivation of constitutional rights through an official policy or custom. Accordingly, Plaintiff's objection is without merit.

After objecting to the Magistrate Judge's recommendations, Plaintiff then complains that he was not released from confinement with a reasonable time after the charges of forgery were dismissed. Plaintiff thus states that he wishes to add the following parties as defendants in this action: the County of Greenville, South Carolina; Paul B. Wickensimer, Clerk of Court of Greenville County; Scotty Bodiford and Jim Dorrieghty, directors of the Greenville County Detention Center; Sergeant Dana Lewis of the Greenville County Detention Center; and Mr. Zachary Porter of the County of Greenville's Indigent Defense Office.

This case was filed on September 28, 2006, and on October 24, 2006, Magistrate Judge

11

Rogers issued a Report and Recommendation in which he recommended dismissing the case without prejudice and without issuance and service of process because the criminal charges against Plaintiff were still pending. Plaintiff filed objections to that R&R, asserting that the charges against him had been dismissed. In an order dated January 3, 2007, this court thus interpreted Plaintiff's objections as a Motion to Amend his Pleadings to comport with the factual developments of the case. Plaintiff filed his Amended Complaint on January 25, 2007.

On June 11, 1007, Plaintiff filed a Motion to Amend his Complaint. He sought to add the Greenville County Detention Center and Greenville County as defendants in the action. The Defendants opposed the motion, and on October 22, 2007, Magistrate Judge Rogers entered an order denying Plaintiff's Motion to Amend. He concluded that Plaintiff had failed to establish "good cause" to modify a scheduling order and that the amendment would be futile.

Plaintiff has thus already had one opportunity to amend his complaint, and he sought another opportunity, which was denied. Furthermore, Plaintiff is seeking to amend his complaint at a late date, after a motion for summary judgment has been filed and after Magistrate Judge Rogers has entered two Reports and Recommendations in this case. Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend a pleading "be freely given when justice so requires." While this court is given discretion to deny the motion to amend, "that discretion is limited by the interpretation given Rule 15(a) in *Foman* [*v. Davis,* 371 U.S. 178 (1962)], 'and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits.'" *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir. 1987) (citation omitted). Upholding the letter and the spirit of this rule, "leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986)) (emphasis in original). A delay in bringing a proposed amendment is insufficient reason to deny leave to amend. *Id.*

In the case *sub judice*, it is clear that Plaintiff should not be allowed to add certain parties as defendants because such an amendment would be futile. Mr. Wickensimer, Clerk of Court of Greenville County, is immune from Plaintiff's suit. *See Ballenger v. Norton*, No. 6:06-cv-3349-RBH, 2007 WL 1462186, at *1 (D.S.C. May 16, 2007); *see also Jackson v. Houck*, 181 Fed. App'x 372, 373 (4th Cir. 2006) ("Absolute immunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function." (internal quotation marks omitted)); *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993). Furthermore, Magistrate Judge Rogers has already addressed Plaintiff's request to add Greenville County as a defendant. Magistrate Judge Rogers stated, "[I]t appears plaintiff would be asserting claims against Greenville County based on a respondeat superior theory. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action." (*See* Doc. No. 62 at 2-3.) For much the same reason that Greenville Police Department is not liable under § 1983, Plaintiff will not be allowed to amend his complaint to add Greenville County as a defendant. Plaintiff has not alleged a deprivation of constitutional rights through an official policy or custom, and thus Greenville County would be entitled to dismissal. Plaintiff will thus not be granted leave to amend his complaint to add Greenville County or Mr. Wickensimer, Clerk of Court of Greenville County, as defendants.

Plaintiff also seeks to add as defendants two directors of the Greenville County Detention Center, Sergeant Dana Lewis of the Greenville County Detention Center, and Mr. Zachary Porter

of the County of Greenville's Indigent Defense Office.  With respect to Mr. Porter, Plaintiff states,

> The Plaintiff was without counsel from 9/26/05 through Feb[ruary of 20]06.  During this time the Plaintiff was not even afforded his right to a preliminary hearing.  A Mr. Zachary Porter who was employed by the County of Greenville's Indigent Defense Office also failed to act within the scope of his official duties by not obtaining counsel on behalf of the Plaintiff upon written request.  The Plaintiff was not appointed counsel in a meaningful nor timely manner and in turn the Plaintiff respectfully request[s] the court allow Mr. Zachary Porter be named as a defendant in this action as well.

(Objections at 8.)  In order to prevail on his § 1983 claim, Plaintiff must prove (1) that he "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under the color of state law."  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998).  In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court addressed the issue of "whether a public defender acts under color of state law when providing representation to an indigent client."  *Polk County*, 454 U.S. at 317.  The Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  *Id*. at 325; *see also Hall v. Quillen*, 631 F.2d 1154, 1156 (4th Cir. 1980) (concluding a court-appointed attorney was entitled to dismissal of the plaintiff's § 1983 claim against him for want of state action); *Stroman v. S.C. Office of Appellate Defense*, 447 F. Supp. 2d 515, 518 (D.S.C. 2005); *Johnson v. Harris*, 483 F. Supp. 710, 712 (D. Md. 1980) ("[C]ourt-appointed counsel in the normal situation do not act 'under color of' state law, for purposes of liability under § 1983, in undertaking representation of indigent defendants in criminal cases.").  Nor does a private attorney retained to represent a criminal defendant act under color of state law.  *Deas v. Potts*, 547 F.2d 800, 800 (4th Cir. 1976).

It is not clear from Plaintiff's Objections whether Mr. Porter is an attorney or not.  If he is

an attorney, he does not act under color of state law, but if he is merely an employee of the Indigent Defense Office, it is less clear whether he acted under color of state law. However, one court stated, "A public defender is not acting under color of state law because he is representing his client, not the state. It is presumed that the same reasoning would apply to an employee of the public defender's office." *Ehrie v. Reybitz*, No. 86-4904, 1986 WL 10794, at *1 (E.D. Pa. Sept. 30, 1986) (citing *Black v. Bayer*, 672 F.2d 309, 317 (3d Cir. 1982), *abrogated on other grounds*, *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1368 n.8 (3d Cir. 1992)). Plaintiff will thus not be granted leave to amend to add Mr. Porter as a defendant.

The claim he seeks to bring against Lewis and the two directors of the Greenville County Detention Center is based on facts different from those he alleged against Detective Floyd and the Greenville Police Department. He complains that the charges against him were dismissed on August 22, 2006, but that he was not released from the Greenville County Detention Center until September 24, 2006. The record contains the affidavit of Sergeant Dana Lewis, a Population Management Sergeant at the Greenville County Law Enforcement Center ("LES"), and her affidavit states,

> 18. It appears from the Greenville County Clerk of Court's records that the Greenville County Solicitor's Office notified the Greenville County Clerk of Court's Office on August 24, 2006 that the five counts of forgery (Warrant numbers H885725, H885726, H885727, H885728, and H885729) had been dismissed due to the inability to locate the victims of the forgery. LEC, however, was not informed of such dismissal until September 22, 2006, when LEC received a fax from the Greenville County Solicitor's Office notifying LEC of the dismissal of the five forgery charges.
>
> 19. Gary was subsequently released from the custody of LEC on September 24, 2006.

(Lewis Aff. ¶¶ 18-19.) While this affidavit seems to indicate Plaintiff was released approximately forty-eight hours after the Greenville County Law Enforcement Center received notification that he

15

was to be released, such a determination at this juncture would be based on considering only one party's evidence and seems a determination better suited in ruling on a motion for summary judgment. Plaintiff has not yet had an opportunity to make allegations against Scotty Bodiford, Jim Dorrieghty, and Sergeant Dana Lewis. Although Plaintiff could have asserted allegations against these defendants when he originally filed his suit, a delay in bringing a proposed amendment is insufficient reason to deny leave to amend. *Johnson*, 785 F.2d at 509. Furthermore, none of the parties that are currently defendants in this suit will suffer prejudice as a result of the amendment because the court has granted these defendants' Motion for Summary Judgment. Finally, the court cannot conclude that an amendment to include these three parties as defendants would be futile. Even though Sergeant Lewis's affidavit indicates Greenville County Law Enforcement Center released Plaintiff within forty-eight hours of being notified that the charges against him were dismissed, Plaintiff asserts that once the Clerk's Office was notified that the charges were dismissed, Greenville County Detention Center was immediately notified. (Objections at 7.) Attached to Plaintiff's Objections is a document entitled "General Sessions Tracking Sheet," and the following information appears on that document:

> **Disposition Information**
> 1. Transmitted to SOL & SCCA:
> 2. Disp Received by Clerk:
> 3. Date of Disposition: 8/22

(Objections Ex. B.) The document also contains the date of August 24, 2006, stamped to the right of the "Disposition Information." (*Id*.) The court thus grants Plaintiff leave to amend his complaint and assert claim(s) against Bodiford, Dorrieghty, and Lewis.

**CONCLUSION**

It is therefore **ORDERED**, for the foregoing reasons, that Defendant Floyd's and Defendant Greenville City Police Department's Motion for Summary Judgment is **GRANTED**. Furthermore, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Amend Complaint. Specifically, Plaintiff's motion is denied with respect to the County of Greenville, South Carolina; Paul B. Wickensimer, Clerk of Court of Greenville County; and Mr. Zachary Porter, County of Greenville's Indigent Defense Office. Plaintiff's motion is granted with respect to Scotty Bodiford and Jim Dorrieghty, directors of the Greenville County Detention Center, and Sergeant Dana Lewis of the Greenville County Detention Center. The court **INSTRUCTS** Plaintiff Ronald Gary to file an **AMENDED COMPLAINT** with the court within **THIRTY (30) DAYS** and **REMANDS** this matter to the Magistrate Judge.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**December 5, 2007**